# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ALABAMA AIRCRAFT INDUSTRIES, INC., | ) | Case No. 11-10452 |
| *et al.*,[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | RE: Docket No. 293 |

## ORDER ON MOTION OF THE DEBTORS SEEKING AN ORDER APPROVING CONTINUED USE OF CASH COLLATERAL

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (the "**Order**") approving continued use of cash collateral and the Court having reviewed the Motion;

**THE COURT HEREBY FINDS**:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B. Special Value Bond Fund, LLC ("**SVBF**") asserts that (a) the Debtors' obligations under the Note Purchase Agreement (the "**SVBF Claims**") are secured by liens (the "**SVBF Liens**" and together with the SVBF Claims, the "**SVBF Claims and Liens**") on substantially all of the Debtors' assets as set forth in the Note Purchase Agreement; (b) the SVBF Liens are valid, perfected, and unavoidable, to which assertions the Debtors have previously stipulated, and (c) the proceeds of Collateral constitute the SVBF's "cash collateral" as that term is defined in section 363(a) of the

---

[1] The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) Alabama Aircraft Industries, Inc. (5295); (ii) Alabama Aircraft Industries, Inc.-Birmingham (6533); and (iii) Pemco Aircraft Engineering Services, Inc. (9969). The mailing address for all of the Debtors is 1943 50th Street North, Birmingham, AL 35212.

Code. The SVBF has consented to the use of cash collateral on the terms set forth in this Order.

C. The Pension Benefit Guaranty Corporation (the "**PBGC**" and together with SVBF, the "**Secured Creditors**") asserts that (a) approximately $7 million of its asserted claims against the Debtors and their estates are secured by liens (the "**PBGC Liens**") on substantially all of the Debtors' assets; (b) the liens are valid, perfected, and unavoidable, and (c) the proceeds of Collateral constitute the PBGC's "cash collateral" as that term is defined in section 363(a) of the Code. The Debtors do not concede that the PBGC liens are valid, perfected, or unavoidable. The PBGC has consented to the use of cash collateral on the terms set forth in this Order.

D. Prior to entry of this Order, the Court has previously entered four orders, appearing at Docket Nos. 36, 91, 134, and 240 authorizing the Debtors to use cash collateral through March 17, 2011, March 24, 2011, May 3, 2011, and June 13, 2011 respectively (together the "**Prior Cash Collateral Orders**");

E. The Debtors have provided notice of the Motion as set forth in the Affidavit of Service of Douglas L. Pullen, as the same appears at Docket No. 303. Such notice is appropriate, adequate and proper under the circumstances of these cases as set forth in the Motion and as presented to this Court and is in accordance with Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2(c).

F. Good cause has been shown for the entry of this Order, and the Court finds the Debtors' use of the Cash Collateral, to the extent authorized herein, is in the best interest of the Debtors, their bankruptcy estates, and creditors of the estates. It is

---

[2] Capitalized terms not otherwise used herein shall have those meanings ascribed to them in the Motion.

further in the best interests of the Debtors' estates to provide the Secured Creditors with adequate protection of their interests in the Collateral as set forth herein.

G. The Court has jurisdiction over this Case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Order is entered in a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(M).

In light of the foregoing, **IT IS HEREBY ORDERED BY THE COURT THAT**:

1. The Motion is granted as set forth herein. All objections to the entry of this Order that have not been withdrawn, waived or settled are hereby denied and overruled.

2. The Debtors shall not use, sell or expend, directly or indirectly, the Collateral or the Cash Collateral without the written consent of the Secured Creditors, except upon the terms and conditions set forth in this Order.

3. The term of this Order shall expire on July 7, 2011 (the "**Termination Date**").

4. The Debtors are hereby authorized to use Cash Collateral until the Termination Date subject to the terms of this Order and for the purposes and in the amounts set forth in the Cash Collateral Budget attached hereto as Exhibit A, provided, that, the Debtors may exceed the aggregate and line item amounts in the Cash Collateral Budget by 10% without the need for further Court order or consent of the Secured Creditors. The Debtors' use of Cash Collateral pursuant to the Cash Collateral Budget shall be on a cumulative basis such that budgeted amounts in one weekly budget period that are not used will carry over and may be used in subsequent weekly budget periods

(on a cumulative basis). The Debtors may utilize amounts earmarked for "other" disbursement in the Cash Collateral Budget for any budgeted expense, and may pay accrued items, which come due for payment subsequent to weekly budget period in which they are projected to be incurred.

5. The Secured Creditors consent to the adequate protection packages provided herein.

6. As adequate protection to the Secured Creditors for the Debtors' use of the Cash Collateral, and to protect against the diminution of the Secured Creditors' interest in the Collateral, to the extent of the use of Cash Collateral on a dollar-for-dollar basis (the "**Adequate Protection Obligation**"), the Secured Creditors are hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, a valid, choate, perfected, enforceable and non-avoidable first priority security interest in and replacement lien and security interest (the "**Replacement Liens**") upon all assets of the Debtors' estates (collectively, the "**Postpetition Collateral**"), in the PBGC's case subject to paragraph 11 hereof. As between SVBF and the PBGC the Replacement Liens shall have the same priority relative to each other as existed prior to the Petition Date. Notwithstanding anything to the contrary in this Order, the Replacement Liens shall not attached to causes of action arising under Chapter 5 of the Bankruptcy Code or the proceeds thereof.

7. The Replacement Liens granted to the Secured Creditors by this Order shall be perfected by operation of law upon the execution and entry of this Order. The Secured Creditors shall not be required to take any action, including, without limitation, the filing of financing statements, mortgages, deeds of trust or other documents, in order to validate or perfect such Replacement Liens. If the Secured

Creditors, in their sole discretion, nonetheless choose to file financing statements, mortgages, deeds of trust or other documents or otherwise confirm perfection of such security interests and liens, the Secured Creditors are authorized to effect such filings and recordations, and all such financing statements, deeds of trust or similar documents shall be deemed to have been filed or recorded as of the date of entry of this Order.

8. The Secured Creditors shall have allowed super-priority administrative claims against the Debtors and their estates to the extent such a claim is provided for under section 507(b) of the Bankruptcy Code (the "**507(b) Claims**").

9. With respect to SVBF, the Debtors are hereby directed to provide the following adequate protection (a) payment of interest accruing at the non-default contract rate from June 14, 2011 through July 7, 2011 which shall be due, payable and paid on July 7, 2011; (b) the accrual of the difference between default interest and non-default interest (a difference of 2%); and (c) funding on June 15, 2011 of a $40,000 advanced payment for anticipated attorneys' fees to counsel to SVBF (the "**SVBF Adequate Protection Payment**").

10. With respect to the PBGC, the Debtors are hereby directed to pay the Alabama Aircraft Industries, Inc.– Birmingham Pension Plan a total of $46,000 on July 7, 2011 (the "**PBGC Adequate Protection Payment**" and together with the SVBF Adequate Protection Payment, the "**Adequate Protection Payments**").

11. If the PBGC Liens are later found not to be valid, perfected, or otherwise unavoidable and the PBGC Liens are avoided or otherwise set aside in full and the PBGC is determined only to be an unsecured creditor of the Debtors, then the PBGC Adequate Protection Payment shall be treated and characterized as a distribution on

account of any allowed unsecured claim for minimum funding contributions filed by PBGC. If the PBGC Liens are later found not to be valid, perfected, or otherwise unavoidable and the PBGC Liens are avoided or otherwise set aside in whole or in part and the PBGC is determined to have a secured claim less than the approximately $7 million secured claim that the PBGC currently asserts, then the PBGC Adequate Protection Payment will be applied in the following manner: (a) first to pay interest at the applicable rate as determined by this Court on the full amount of any allowed secured claim of the PBGC from June 14, 2011 through July 7, 2011; and (b) second to reduce the outstanding principal balance of any allowed secured claim of the PBGC.

12. The Debtors may maintain their existing bank accounts in accordance with this Court's Order Authorizing the Debtors to Continue Use of Cash Management System, which Order appears at Docket No. 34 on these cases.

13. The Debtors shall continue to provide the Secured Creditors with a report that compares the actual use of cash against the Cash Collateral Budget (on a cumulative basis) for the prior calendar week.

14. The terms and provisions of this Order shall be binding upon the Debtors and their successors and assigns, including, but not limited to, any trustee appointed in these cases, in any superseding case or in any case related hereto, and shall survive to the benefit of the Debtors.

15. The automatic stay imposed by section 362 of the Bankruptcy Code shall be modified to the extent necessary, if at all, to implement and effectuate the terms and conditions of the Order.

16. The following events shall constitute events of default under this Order and shall immediately terminate the use of Cash Collateral hereunder:

    (a)    conversion of the Debtors' cases to chapter 7 of the Bankruptcy Code;

    (b)    appointment of a trustee or examiner with expanded powers;

    (c)    any of the following does not occur within five (5) business days of the date listed:

        (i)    execution of the APA (as defined in the Motion of the Debtors Requesting Entry of an Order (a) Approving Bidding Procedures for a Potential Sale of the Debtors Assets, (b) Scheduling an Auction, (c) Scheduling a Sale Hearing, and (d) Approving the Form and Manner of Notice of Auction and Sale Hearing (the "**Bidding Procedures Motion**"), which appears at Docket No. 216 in these cases) on or before June 18, 2011;

        (ii)    filing of the Auction Supplement on or before June 20, 2011;

        (iii)    the Sale Hearing (as defined in the Bidding Procedures Motion) occurring by July 7, 2011;

(iv) the Court entering an Order approving the Sale Motion (as defined in the Bidding Procedures Motion) by July 10, 2011;

(v) closing of the Sale (as defined in the Bidding Procedures Motion) by July 31, 2011;

(d) the executed APA (as defined in the Bidding Procedures Motion) or any executed offer to purchase the Debtors' assets is terminated for any reason; or

(e) the Debtors' cash balance, on any day on or after June 13, 2011, is lower than $275,000.

17. Except as otherwise set forth in this Order or in the Prior Cash Collateral Orders, nothing contained in this Order or in any document or instrument delivered in connection with this Order shall prejudice the Debtors with respect to any adversary proceeding, contested matter involving relief from the automatic stay, appointment of a trustee or examiner, the assumption or rejection of executory contracts, dismissal of the Debtors' Chapter 11 cases, or with respect to any other matter whatsoever. Except as otherwise expressly set forth in this Order or in the Prior Cash Collateral Orders, this Order shall in no way limit the rights of the Debtors, any official unsecured creditors committee or any other party in interest to investigate and/or challenge the validity and/or priority of the liens of the Secured Creditors in the Collateral.

18. Nothing in this Order shall prejudice or affect (i) the rights of any contract counterparty to the Debtors including, but not limited to, contract remedies, set

off rights, recoupment rights, contract rights, defenses, claims, counterclaims, or other rights arising under sections 506(a)(1), 542, and 553 of the Bankruptcy Code or (ii) the Debtors' rights to oppose any such requests or actions by any contract counterparty.

19. Any stay or modification of this Order shall not alter any claim, lien or other protection granted to the Secured Creditors Order prior to the actual receipt by the Secured Creditors of notice of the effective date of such stay or modification. All use of Cash Collateral prior to the Secured Creditors receipt of such notice shall be governed in all respects by the terms of this Order.

20. Within two (2) business days of the entry of this Order the Debtors shall serve by first class U.S. mail, postage prepaid, a copy of this Interim Order upon the following: (i) the United States Trustee for the District of Delaware; (ii) SVBF; (iii) the PBGC; (iv) counsel to the Official Committee of Unsecured Creditors; (v) Wells Fargo; and (vi) those parties that have requested notice pursuant to Bankruptcy Rule 2002.

21. This Order shall constitute findings of fact and conclusions of law and shall be fully enforceable immediately upon entry.

22. This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Interim Order.

Dated: June 3 2011
Wilmington, Delaware

PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE